UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSANTHONY WILSON, individually, and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>WELLS FARGO & CO.; WELLS FARGO BANK, N.A.; and DOES 1 through 5, inclusive,<br><br>                                    Defendants. | Case No.: 20-cv-2307-DMS-WVG<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

Pending before the Court is Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A.'s (collectively "Wells Fargo" or "Defendant") motion to compel arbitration. Plaintiff Mosanthony Wilson filed an opposition to the motion, and Defendant filed a reply. For the following reasons, the Court grants the motion and stays further proceedings pending arbitration.

**I.**

**BACKGROUND**

Plaintiff is a customer of Wells Fargo, a nationally chartered bank headquartered in San Francisco, California. (Compl., ECF No. 1, ¶ 23.) Under Federal Reserve regulations,

a bank must disclose its overdraft policies and obtain a customer's affirmative consent to such policies via an "opt-in disclosure agreement." (*Id.* ¶¶ 1, 62.) Plaintiff opted into Wells Fargo's overdraft program for his debit card and ATM transactions, permitting Wells Fargo to charge a fee to an account when it advances its own funds to cover the accountholder's insufficient funds. (*Id.* ¶¶ 25–26, 31.) Plaintiff alleges Wells Fargo's opt-in disclosure agreement does not accurately describe the circumstances under which Wells Fargo will charge the customer an overdraft fee, and that he has been assessed numerous improper fees on debit card and ATM transactions. (*Id.* ¶¶ 2, 31, 65–66.) For instance, on August 17, 2020, Plaintiff was assessed a $35.00 overdraft fee on a $20.11 non-recurring debit card transaction, even though Plaintiff had a positive account balance and sufficient money in the account to pay for the transaction. (*Id.* ¶ 31.)

On November 25, 2020, Plaintiff filed this putative class action, alleging two claims: (1) violation of the Electronic Fund Transfer Act, 12 C.F.R. §§ 1005, *et seq.* ("Regulation E"), and (2) violation of California's Unfair Competition Law ("UCL"). Plaintiff seeks damages, civil penalties, injunctive relief, and attorneys' fees and costs.

Defendant moves to enforce the arbitration agreement included in Wells Fargo's Consumer Account Agreement (the "Account Agreement"). (Ex. C to Decl. of Karen Nelson in Supp. of Defs.' Mot. ("Ex. C"), ECF No. 21-15.) The Account Agreement contains an arbitration agreement (*id.* at 4–5 (the "Arbitration Agreement")), which provides for arbitration of any "dispute" between Wells Fargo and the customer. In relevant part, the Arbitration Agreement states:

> A dispute is any unresolved disagreement between Wells Fargo and you. A dispute may also include a disagreement about this Arbitration Agreement's meaning, application, or enforcement.
>
> **Wells Fargo and you each agrees to waive the right to a jury trial or a trial in front of a judge in a public court.** This Arbitration Agreement has only one exception: Either Wells Fargo or you may still take any dispute to small claims court.

(*Id.* at 4 (emphasis in original).)

Defendant argues Plaintiff's claims are subject to the above mandatory arbitration agreement.  Plaintiff opposes the motion, arguing the Arbitration Agreement is unenforceable under *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017).

## II.
## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement of arbitration agreements involving interstate commerce. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013).  "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "The FAA 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration has been signed.' " *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original).  Accordingly, the Court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If both factors are met, the Court must enforce the arbitration agreement according to its terms. The burden of proving that the claims at issue are not suitable for arbitration is on the party resisting arbitration. *Green Tree Fin. Corp-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## III.
## DISCUSSION

In deciding whether to compel arbitration, a district court must determine two gateway issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where 'the

parties clearly and unmistakably provide otherwise.' " *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Here, the parties do not dispute that Plaintiff accepted the Account Agreement, including the Arbitration Agreement, when he opened his Wells Fargo account. Rather, Plaintiff argues the Arbitration Agreement is unenforceable because it bars his right to obtain public injunctive relief and thus violates the California Supreme Court's decision in *McGill*. Defendant contends the parties agreed to arbitrate any threshold issues of arbitrability, including whether *McGill* applies, and that in any event, the Arbitration Agreement does not run afoul of *McGill*.

Although Plaintiff argues the Court should decide the *McGill* issue first, the question of *McGill*'s applicability is a disagreement over the "meaning, application, or enforcement" of the Arbitration Agreement. (Ex. C at 4.) The Arbitration Agreement states that such gateway disputes must be heard by the arbitrator. Thus, the Court first addresses whether the Arbitration Agreement's delegation of arbitrability to the arbitrator is valid.

**A. Delegation of Arbitrability**

Defendant contends that under the terms of the Arbitration Agreement, any dispute regarding the Arbitration Agreement's validity is delegated to the arbitrator. Plaintiff argues the Arbitration Agreement's provisions are contradictory with respect to delegation and thus the Court, not the arbitrator, must decide gateway questions of validity.

The Ninth Circuit has held "language 'delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement.' " *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)); *see Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as . . . whether their agreement covers a particular controversy.").

Where the parties have "clearly and unmistakably" delegated such gateway issues to the arbitrator, the validity of the arbitration agreement is a question for the arbitrator to decide, rather than the court. *AT & T Techs.*, 475 U.S. at 649. However, "there is a

presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

Here, Plaintiff argues the Arbitration Agreement does not "clearly and unmistakably" delegate gateway questions to the arbitrator because there is contradictory language regarding delegation. The Arbitration Agreement provides that disputes between a customer and Wells Fargo, including any "disagreement about this Arbitration Agreement's meaning, application, or enforcement," must be decided by an arbitrator. (Ex. C at 4.) Plaintiffs assert this language conflicts with a provision elsewhere in the Account Agreement, which states:

> Wells Fargo and you each agree that any lawsuits, claims, or other proceedings arising from or relating to your account or the Agreement, including the enforcement of the Arbitration Agreement and the entry of judgment on any arbitration award, will be venued exclusively in the state or federal courts in the state whose laws govern your account, without regard to conflict of laws principles.

(Ex. C at 9.)[1]

Plaintiff argues these two provisions are contradictory with respect to "enforcement" of the Arbitration Agreement. In response, Defendant contends these provisions simply set forth who decides threshold questions and where a lawsuit must proceed, respectively, and thus they do not conflict. The Court finds these provisions are not contradictory. The Ninth Circuit addressed a similar issue in *Mohamed v. Uber Technologies*, 848 F.3d 1201 (9th Cir. 2016), and concluded there was no conflict.

In *Mohamed*, the district court had determined the delegation provisions of the arbitration agreement in question were unambiguous, but conflicted with a venue provision elsewhere in the parties' agreements. *See* 848 F.3d at 1209. The venue provision stated that "any disputes, actions, claims, or causes of action arising out of or in connection with

---

[1] This provision is in a separate section of the Account Agreement titled "Important legal information."

this Agreement or the Uber Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco." *Id.* On appeal, the Ninth Circuit found these conflicts were "artificial." *Id.* It explained: "As for the venue provision, the California Court of Appeal has observed that '[n]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies.' " *Id.* (quoting *Dream Theater, Inc. v. Dream Theater*, 21 Cal.Rptr.3d 322, 328 (Cal. Ct. App. 2004)). The court found it "apparent" that the venue provision was intended for those purposes, and "to identify the venue for any other claims that were not covered by the arbitration agreement," and thus it did not conflict with "the agreement's unambiguous statement identifying arbitrable claims and arguments." *Id.* The arbitration provisions "clearly and unmistakably delegated the question of arbitrability to the arbitrator." *Id.*

Plaintiff points to *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930 (N.D. Cal. 2015), but that case, which involved a severability clause, is distinguishable. There, the district court found the delegation provisions of the arbitration agreement in question to be contradictory because they indicated " 'any arbitrator *or court*' could declare or determine that a provision of the Agreement is invalid or unenforceable." 143 F. Supp. 3d at 940 (emphasis in original). It therefore concluded that there was no clear and unmistakable delegation of authority to the arbitrator. *Id.*

Here, by contrast, the language of the separate venue provision does not directly indicate the court has the ability to declare a provision unenforceable. Rather, the venue provision and its purposes are akin to the one at issue in *Mohamed*, and thus it does not conflict with the delegation provision, which identifies arbitrable claims. *See Mohamed*, 848 F.3d at 1209; *Pompliano v. Snap Inc.*, No. CV173664DMGJPRX, 2018 WL 3198454, at *4 (C.D. Cal. Apr. 11, 2018) (holding venue clause did not conflict with arbitration clause because it "merely address[ed] where venue would be proper if a lawsuit arose")

(citing *Mohamed*, 848 F.3d at 1209)).  The Court finds the parties agreed to arbitrate gateway issues of arbitrability.

### B. Applicability of *McGill*

In *McGill*, the California Supreme Court held that a contractual provision which waives a party's right to seek public injunctive relief is unenforceable under California law. 393 P.3d at 86.  This rule is a "generally applicable contract defense" and is not preempted by the FAA.  *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 828 (9th Cir. 2019).  Plaintiff argues *McGill* applies here and renders the Arbitration Agreement unenforceable.  Defendant argues *McGill* does not apply because the Arbitration Agreement does not prohibit public injunctive relief, Plaintiff does not actually seek public injunctive relief, and even if he did, Plaintiff lacks standing to obtain such relief.

The Court need not reach these arguments, because "the application of the '*McGill* rule' is a gateway issue that may be delegated to the arbitrator." *Marselian v. Wells Fargo & Co.*, No. 20-CV-03166-HSG, 2021 WL 198833, at *6 (N.D. Cal. Jan. 20, 2021) (collecting cases).  Where, as here, the parties have delegated arbitrability to the arbitrator, the application of *McGill* is a question for the arbitrator, not the Court, to decide. *Moffett v. Recording Radio Film Connection, Inc.*, No. CV 19-3319 PSG (KSX), 2020 WL 6143595, at *3 (C.D. Cal. Jan. 31, 2020) (collecting cases); *Ramirez v. Elec. Arts Inc.*, No. 20-CV-05672-BLF, 2021 WL 843184, at *4 (N.D. Cal. Mar. 5, 2021) ("The issue presented here—whether the Arbitration Provision is unenforceable because it improperly limits the right to seek public injunctive relief—is clearly a matter regarding the validity of the Arbitration Provision. As such the Court finds that it is plainly delegated to an arbitrator . . . to decide.").

Plaintiff's reliance on *Lotsoff v. Wells Fargo Bank, N.A.*, No. 18-CV-02033-AJB-JLB, 2019 WL 4747667 (S.D. Cal. Sept. 30, 2019), is unavailing.  In that case, the issue of delegation of arbitrability was not raised—rather, the court proceeded directly to the question of whether *McGill* applied.  Here, because the Court finds the Arbitration Agreement delegates threshold issues of arbitrability, including the "meaning, application,

or enforcement" of the agreement's terms, the question of whether *McGill* applies must be decided by the arbitrator. Accordingly, the Court grants Defendant's motion to compel arbitration.

### C. Stay of Proceedings Pending Arbitration

Defendant asks the Court to dismiss Plaintiff's claims as subject to the Arbitration Agreement, or in the alternative, to stay the case pursuant to 9 U.S.C. § 3.

"[A] district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Here, although the Court grants Defendant's motion to compel arbitration, the arbitrator must first determine the threshold questions of whether the Arbitration Agreement is enforceable. "Because it is not certain that [Plaintiff's] claims will remain in arbitration, outright dismissal is not appropriate." *Ramirez*, 2021 WL 843184, at *5 (staying action pending arbitration). The Court therefore stays this action pending the completion of the arbitration proceedings.

## IV.
## CONCLUSION AND ORDER

For the reasons set out above, Wells Fargo's motion to compel arbitration is GRANTED. The Court stays the litigation to permit an arbitrator to decide the questions of arbitrability, and then, if permissible, to arbitrate the substantive claims. Within fourteen (14) days of the completion of the arbitration proceedings, the parties shall jointly submit a report advising the Court of the outcome of the arbitration and request to dismiss the relevant counts or vacate the stay.

**IT IS SO ORDERED**.

Dated:  May 8, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court